# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER, <br><br> Plaintiff, <br><br> v. <br><br> SCOTT KERNAN, et.al., <br><br> Defendants. | Case No.: 1:19-cv-00497-DAD-SAB (PC) <br><br> FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF <br><br> [ECF No. 30] |

Plaintiff Allen Hammler is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's second amended complaint, filed on October 3, 2019.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

///

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the first amended complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is housed at the California State Prison, Corcoran ("CSP").

Plaintiff is an ex-member of the Bloods, a street and prison gang. In 2009, he entered into a contract with the CDCR agreeing to be housed in the Sensitive Needs Yard ("SNY") where he would be housed with other prisoners that were not gang members. In exchange for disassociating himself with the Bloods gang and entering the SNY, Plaintiff was to be provided with an environment where he could live and program free from gangs. The agreement was signed.

In 2016, Plaintiff was no longer able to program on the SNY due to the formation of a new SNY. Plaintiff asserted his right to be provided with a living environment in accord with the terms of the 2009 agreement. Plaintiff has had the state's agents and employees refuse to honor the contract

and has submitted a number of inmate appeals regarding the conditions on the SNY and its gang infestation. Plaintiff has also filed other complaints regarding a missing inmate appeal that was dated August 8, 2018.

Plaintiff has been seeking since 2016 to avoid being housed on the SNY and has requested that he be voluntarily housed in the Administrative Segregation Unit ("ASU"). Plaintiff has had correctional officers poke fun at his safety concerns about being housed on the yards with gangs. Around August 8, 2018, Correctional Officer Ehlers read Plaintiff's August 8, 2018 grievance and gave it to gang members knowing that it would inflame them. A few days later, Plaintiff was in the recreation yard and had a friendly gang member tell him in confidence that a high ranking member of his gang and other SNY gangs had placed a "green light" (murder hit) on Plaintiff for speaking ill of them in documents. This occurred at Sacramento State Prison.

Plaintiff was subsequently transferred to CSP. On September 5, 2018, Plaintiff was informed by counselor S. Castillo that he would be called to the ICC on September 6, 2018. Plaintiff told Castillo that he had housing concerns that needed to be addressed with the ICC that had to do with him being unable to continue being housed on the SNY. Plaintiff told Castillo that he has real safety concerns and that he had not been able to safely program on any SNY. Plaintiff informed Castillo that he had not been housed on a SNY unless he was forced to for three years. Plaintiff also told Castillo that he had filed a civil action on his continued housing on the SNY. Plaintiff was told by Castillo that he would need to address his concerns to the ICC in order to be voluntarily housed in the Security Housing Unit ("SHU"). Castillo had Plaintiff sign a form that he had been informed of the pending ICC and waived the mandatory seventy-two hour notice to prepare for the hearing. Castillo told Plaintiff that he would see him the next day and took the paperwork and left.

On September 6, 2018, Correctional Officers Corona and Loza went to Plaintiff's cell to escort him to the ICC. Plaintiff was provided with a size 5X jumpsuit which he refused to wear. Because Plaintiff refused to wear the jumpsuit he was said to have refused to attend the ICC. Plaintiff received a CDCR 128-G that recorded the ICC's actions and saw that facts had been fabricated by Defendants Parks and Camp in concert with others.

///

3

1 | The 128-G records that Defendant Mejia, the psychologist in attendance stated that Plaintiff's mental health was unlikely to decompensate while he was retained in the SHU/ASU. The document also stated that Defendant Galaviz ensured that effective communication was achieved with him although he was not in attendance at the ICC. The 128-G recorded that Plaintiff had been placed in the ASU on March 27, 2018, at Sacramento State Prison for battery on a police officer when he had not been. The 128-G recorded that during a pre-ICC case conference, Plaintiff had met with Defendant Galaviz and that Galaviz reiterated the Committee's recommendation and that Plaintiff stated that he understood, but that Defendant Galaviz did not meet with him and falsely recorded that Plaintiff had waived the right to appear. The form also stated that Plaintiff was interviewed during the ICC but he could not have been since Plaintiff was not in attendance. The form recorded that Plaintiff can safely program on CSP's SNY pending transfer to a "180 design facility" and the ICC elected to house Plaintiff on the SNY. Plaintiff would have objected to both these actions had he been at the ICC and would not have agreed to be housed on the SNY.

Plaintiff has not had a cellmate since 2015 and will accept no cellmate.

Plaintiff alleges that the actions of the defendants were slanderous, were taken in retaliation for his voicing his security concerns to Castillo.

Plaintiff alleges that it was unordinary for a 128-G to not reflect the information and evidence relief upon for the ICC's decision and the hearing on September 6, 2018, was "atypical" and violated his due process rights because it was mandated that his safety concerns be considered.

Plaintiff in speaking to Castillo at his cell door informed him that he had real and significant safety concerns and that he had not been housed in any SNY over the last three years. Plaintiff discussed the option of being held in the SHU voluntarily and was told by Castillo that he would confer with Defendant Galaviz. On information and belief, Plaintiff contends that Castillo did confer with Galaviz who conferred with each named Defendant and they all failed to record Plaintiff's safety concerns on the 128-G.

Plaintiff has been intentionally misled to enter the SNY problem in violation of his due process rights as the conditions were misrepresented to him. Plaintiff had a right to refuse placement in the SNY. Plaintiff contends the mandatory and uniformed language used in California Code of

Regulations section 3341.3 created a liberty interest. The SNY is "flooded" with gang members, has no ethnic balance, and has integrated housing.

Plaintiff brings this action against Scott Kernan, E Parks, C. Campa, T. Galaviz, and R. Mejia alleging violations of the First, Eighth, and Fourteenth Amendments, and state tort claims. He is seeking monetary damages.

### III.

### DISCUSSION

**A.     Section 1983**

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. <u>Nurre v. Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>Jones</u>, 297 F.3d at 934. To state a claim under section 1983, a plaintiff is required to demonstrate that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. <u>Long</u>, 442 F.3d at 1185. There is no *respondeat superior* liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. <u>Iqbal</u>, 556 U.S. at 677. To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. <u>Jones</u>, 297 F.3d at 934.

    1.     <u>First Amendment</u>

Plaintiff alleges violation of his "substantive" rights and retaliation under the First Amendment.

    **a.     Freedom of Speech**

Plaintiff alleges that he was denied his "substantive" rights under the First Amendment. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Plaintiff does not specific what "substantive" right that he is alleging has been infringed upon by the allegations in the complaint. To the extent that Plaintiff is alleging that this right to freedom of speech has been violated, the Court finds that he has failed to state a claim.

5

The Supreme Court has long recognized that "(l)awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948); see also Pell v. Procunier, 417 U.S. 817, 822, (1974); Wolff v. McDonnell, 418 U.S. 539, 555 (1974). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." Jones v. North Carolina Prisoners' Labor Union Inc., 433 U.S. 119, 125 (1977) (quoting Price, 344 U.S. 266, 285 (1948)). Prison inmates retain First Amendment rights that are not inconsistent with their status as a prisoner or with the legitimate penological objectives of the correctional system. Pell, 417 U.S. at 822; Shaw v. Murphy, 532 U.S. 223, 229 (2001). "In order to state a cognizable First Amendment free speech claim, Plaintiff must plead that his speech was constitutionally protected, that Defendant's actions would chill an ordinary person from continuing in that activity, and that Defendant's actions were motivated by his constitutionally protected speech." Nunez v. Ramirez, No. 09CV413-WQH BLM, 2009 WL 6305676, at *4 (S.D. Cal. Nov. 12, 2009), report and recommendation adopted, No. 09CV413 WQH BLM, 2010 WL 1222058 (S.D. Cal. Mar. 24, 2010) (citing Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300-1301 (9th Cir.1999)).

Here, while Plaintiff alleges that his First Amendment rights were violated, the complaint is devoid of any facts that any named defendant took action to prevent him from engaging in protected activity. Although Plaintiff states that he would have objected to being placed on the SNY had he been present at the hearing, he did not attend the hearing. Further, there are no facts alleged by which the Court could reasonably infer that any named defendant prevented Plaintiff from attending the hearing to prevent him from speaking. Rather, as the facts are alleged, Plaintiff did not attend the hearing because he refused to wear the jumpsuit that had been provided to him. Plaintiff has failed to state a plausible claim that any named defendant interfered with his right to free speech.

**b.    Retaliation**

The basis of Plaintiff's First Amendment claim is that the defendants retaliated against him by placing him in the SNY. A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation under section 1983. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). A viable

claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

A plaintiff suing for retaliation under section 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. Rhodes, 408 F.3d at 569. The burden is on the plaintiff to plead and prove the absence of any legitimate correctional goals for the alleged conduct. Pratt, 65 F.3d at 807. To state a claim, Plaintiff must establish a nexus between the alleged retaliatory act and the protected activity, see Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir.2000), and must show he suffered more than minimal harm, Rhodes, 408 F.3d at 568 n. 11.

Plaintiff has alleged that he was engaged in protected speech by speaking out on his safety issues and by filing grievances and complaints. However, the complaint is devoid of any allegations that would support a reasonable inference that Plaintiff was housed in the SNY because of his protected conduct. First, there is no indication that the individuals who made the decision to house Plaintiff in the SNY were aware that Plaintiff had filed grievances or civil actions. But more importantly, there are no facts to indicate that Plaintiff was housed in the SNY due to his complaints, grievances, or speaking out due to his safety issues. Rather, the complaint alleges that due to Plaintiff's agreement to drop out of the gang, he was to be housed in the SNY and had been so housed. The fact that Plaintiff sought to be housed in a more secure area of the prison does not lead to a reasonable conclusion that any defendant failed to house him there because he requested it. If that were the case, any inmate would state a retaliation claim simply by making a request and having it denied. Plaintiff has set forth no facts in his complaint that would establish a nexus between his protected conduct and the decision to house him on the SNY. Plaintiff has failed to state a plausible

1  claim for retaliation.

2      2.      Eighth Amendment

Plaintiff brings claims for violation of the Eighth Amendment. The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th 2006) (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). In order to state a claim, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 847; Frost, 152 F.3d at 1128.

Plaintiff alleges that he was concerned for his safety because the SNY was "flooded" with gang members, has no ethnic balance, and has integrated housing. However, Plaintiff's vague and conclusory allegations that the SNY was flooded with gang members, has no ethnic balance, and integrated housing is insufficient to allege that he was at a substantial risk of harm by being housed on the SNY. Plaintiff has also alleged that a hit was placed on him by gang members while he was housed at Sacramento State Prison due to his complaining about gang activity and that he was subsequently transferred to CSP. The second amended complaint contains no factual allegations that Plaintiff was subjected to a serious risk of harm by being housed in the SNY at CSP. Plaintiff's speculative and generalized fear of gang members in the SNY does not give rise to the level of a substantial risk of serious harm. See Williams v. Wood, 223 F. App'x. 670, 671 (9th Cir. 2007) ("speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently

8

substantial risk of serious harm"). Further, Plaintiff's allegations that that the California Inspector General has documented that the conditions are atypical is simply too vague for the Court to infer any safety concerns. Rather atypical conditions refer to conditions that are different from those that the typical inmate would be exposed to. See Sandin v. Conner, 515 U.S. 472, 485 (1995) (atypical conditions of confinement are a "dramatic departure from the basic conditions of [an inmate's] sentence."). Plaintiff has failed to state a cognizable claim for deliberate indifference in violation of the Eighth Amendment.

3.  Fourteenth Amendment

The Fourteenth Amendment Due Process Clause "protects persons against deprivations of life, liberty, or property." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The due process clause protects two distinct but related rights: procedural due process and substantive due process. Albright v. Oliver, 510 U.S. 266, 272 (1994). Here, Plaintiff alleges violations of both the substantive and the procedural protections of the Due Process Clause.

**a. Substantive Due Process**

The substantive protections of the due process clause bar certain governmental actions regardless of the fairness of the procedures that are used to implement them. Cty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998). Therefore, the substantive protections of the due process clause are intended to prevent government officials from abusing their power or employing it as an instrument of oppression. Lewis, 523 U.S. at 846. However, in this instance, the gravamen of Plaintiff's complaint is that prison officials were deliberately indifferent to his safety by housing him in the SNY rather than granting his request to be housed in the SHU. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted) overruled on other grounds by Unitherm Food Systems, Inc. V. Swift –Eckrick, Inc., 546 U.S. 394 (2006); Lewis, 523 U.S. at 842.

In this case, the Eighth Amendment "provides [the] explicit textual source of constitutional protection . . . ." Patel, 103 F.3d at 874. Therefore, the Eighth Amendment rather than the Due

9

Process Clause of the Fourteenth Amendment governs Plaintiff's claims.

    **b.    Procedural Due Process**

As Plaintiff was previously advised, the Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. Wilkinson, 545 U.S. at 221. The Due Process Clause itself confers no liberty interest in freedom from the SHU. Id. at 221. While a liberty interest in avoiding particular conditions of confinement *may* arise from state policies or regulations, the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is *not* the language of the regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 222-23 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Brown v. Oregon Dep't of Corr., 751 F.3d 983, 987 (9th Cir. 2014). Only those conditions which impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" give rise to a protected state-created liberty interest. Wilkinson, 545 U.S. at 222-23 (citing Sandin, 515 U.S. at 484) (internal quotation marks omitted); Brown, 751 F.3d at 987.

Plaintiff states that the language of the state regulations setting forth the procedural requirements create a liberty interest in remaining free from being housed in the SNY. But is *not* the language of the regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 222-23. Plaintiff has failed to allege any facts by which the Court can find that being housed in the SNY imposes atypical and significant hardship in relation to the ordinary incidents of prison life.

Further, Plaintiff's claim here is that he was denied his request to be housed in the SHU. While an inmate may have a liberty interest in **avoiding being housed** in more restrictive conditions of confinement, Wilkinson, 545 U.S. at 222-23, there is no liberty interest in **being housed** in more restrictive conditions of confinement. See Meachum v. Fano, 427 U.S. 215, 224 (1976) (no right to be housed in a particular prison); Grayson v. Rison, 945 F.2d 1064, 1067 (9th Cir. 1991) (no right to be housed in a particular area of the prison). To the extent that Plaintiff is attempting to allege a claim based on the denial of his request that he be housed in the SHU due to safety concerns, his claim

would arise under the Eighth Amendment not the Due Process Clause.

Plaintiff also alleges that the 128-G contained false statements. The Due Process Clause itself does not contain any language that grants a broad right to be free from false accusations, but guarantees certain procedural protections to defend against false accusations. Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986); see also Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (claim that false charges were filed standing alone insufficient to state a claim). Further, there is no property or liberty interest in the documents contained in an inmate's central file. Plitt v. Gonzalez, No. 1:08-cv-01352-BLW-LMB, 2011 WL 3813099, *5 (E.D. Cal. Aug. 26, 2011).

Plaintiff also alleges that he refuses to accept a cellmate. Plaintiff has no constitutional right to single cell status. Waters v. Flores, No. 1:10-CV-02169-AWI, 2012 WL 484530, at *3 (E.D. Cal. Feb. 14, 2012) (citing Cox v. Palmer, No. 3:08–cv–00663–ECR (RAM), 2011 WL 4344047, *13 (D. Nev. July 27, 2011), and Wyatt v. Stratton, 2:06–cv–05210 FCD–KJM, 2009 WL 385613 * 2 (E.D. Cal. Feb.12, 2009)). California regulations provide that it is the expectation that all inmates double cell whether housed in a Reception Center, General Population (GP), an ASU, a SHU, or specialty housing unit. Cal. Code Regs. tit. 15, § 3269. Double celling inmates does not "impose atypical and significant hardship in relation to the ordinary incidents of prison life", and Plaintiff has no liberty interest in having a single cell. See Wolfish, 441 U.S. at 542 (disagreeing that there is some sort of "one man, one cell" principle lurking in the Due Process Clause of the Fifth Amendment).

Accordingly, Plaintiff has not identified a liberty or property interest protected by the Due Process Clause and has failed to state a cognizable due process claim.

### B. State Tort Claims

As Plaintiff has failed to state a federal claim, the Court does not have subject matter jurisdiction of his state law claims, which includes his claim for breach of contract. See 28 U.S.C. § 1367(c)(3).

### C. Official Capacity Claims

Finally, Plaintiff states he is bringing this action against Defendant Kernan in his official capacity and is seeking monetary damages. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."

Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). Plaintiff cannot bring this suit for monetary damages against Defendant Kernan in his official capacity.

The Eleventh Amendment does not bar claims for prospective injunctive relief against an officer of the state who acts in his official capacity. Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007); Cerrato v. San Francisco Cnty. Coll. Dist., 26 F.3d 968, 973 (9th Cir. 1994). A suit brought against government officials in their official capacity is generally equivalent to a suit against the government itself. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). Therefore, officials may be held liable if "'policy or custom' . . . played a part in the violation of federal law." McRorie, 795 F.2d at 783 (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985); Hafer v. Melo, 502 U.S. 21, 25 (1991). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989).

## IV.

## CONCLUSION AND RECOMMENDATION

Plaintiff's second amended complaint fails to state a cognizable claim for relief. Plaintiff was previously notified of the applicable legal standards and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's second amended complaint is largely identical to the first amended complaint. Based upon the allegations in Plaintiff's complaints, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support a claim for relief, and further amendment would be futile. See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.") Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Accordingly, it is HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with this Findings and Recommendation, Plaintiff may file written objections

with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 16, 2019**

UNITED STATES MAGISTRATE JUDGE